Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IX

| | | |
|---|---|---|
| WASTE COLLECTION CORP.<br><br>Apelante<br><br><br>v.<br><br><br>MUNICIPIO AUTÓNOMO DE CIDRA, ET ALS.<br><br>Apelados | TA2026AP00318 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Caso número: CG2021CV02138<br><br>Sobre: Incumplimiento de Contrato, Daños |

Panel integrado por su presidenta, la juez Brignoni Mártir, el juez Salgado Schwarz y la juez Aldebol Mora.

Aldebol Mora, Juez Ponente

# SENTENCIA

En San Juan, Puerto Rico, a 19 de mayo de 2026.

Comparece la parte apelante, Waste Collection Corp., y nos solicita que revoquemos la *Sentencia Parcial* emitida el 9 de febrero de 2026, notificada el día 12 del mismo mes y año, por el Tribunal de Primera Instancia, Sala Superior de Caguas. Mediante dicho dictamen, el foro primario dictó Sentencia Parcial desestimando la Demanda en su totalidad, incoada en contra del Municipio Autónomo de Cidra. Además, declaró nulo el decreto de exención contributiva emitida a favor de Waste.

Por los fundamentos que exponemos a continuación, se confirma el dictamen apelado. Veamos.

## I

El 23 de agosto de 2021, Waste Collection Corp. (Waste o apelante) incoó una *Demanda*[1], sobre incumplimiento de contrato, daños e interferencia torticera, en contra del Municipio Autónomo de Cidra (Municipio o apelada) y otros. Waste alegó que el 1 de junio

---

[1] Entrada Núm. 1 del Caso CG2021CV02138 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).

de 2021, el Municipio le envió una misiva notificando la cancelación del contrato sobre manejo de desperdicios sólidos y escombros, efectivo el 1 de julio de 2021. Adujo que dicha misiva fue enviada en contravención del Contrato Núm. 2014-000298 (Contrato) suscrito entre las partes. Sostuvo que la cancelación del Contrato estaba atada al incumplimiento por parte de Waste y que dicho incumplimiento no ocurrió. Alegó que la misiva no hizo mención de incumplimiento alguno por parte de Waste, ni tampoco brindó término para corregir ningún incumplimiento. En cuanto a la alegación de intervención torticera, Waste alegó que para la misma fecha de la mencionada misiva, el Hon. Ángel David Concepción González (Concepción González o Alcalde), Alcalde del Municipio, comenzó una serie de acciones dirigidas a interferir de forma torticera en la relación contractual entre el Municipio y Waste.

El 3 de marzo de 2022, el Municipio presentó su *Contestación a la Demanda, Reconvención y Demanda contra Tercero Enmendada*[2]. En dicho escrito, el Municipio, además de negar las alegaciones presentadas en su contra, alegó que ejerció la facultad de cancelar el Contrato, tal como dispone el Artículo 4, Inciso 2 del mismo. Además, adujo que a partir del 1 de junio de 2021, fecha en que envió la misiva, Waste incumplió con el Contrato y abandonó los servicios de recogido de desperdicios sólidos durante el mes de junio de 2021. Sostuvo que dicho incumplimiento provocó una emergencia ambiental en todo el Municipio, que a su vez provocó que este incurriera en gastos para poner al día el servicio de recogido de basura en el Municipio de Cidra. Asimismo, adujo que en junio de 2015, el Municipio le otorgó un *Decreto de Exención Contributiva Municipal* a Waste, y que este era ilegal. Sostuvo que Waste reclamó beneficios contributivos en función del mencionado decreto, y que

---

[2] Entrada Núm. 16 del Caso CG2021CV02138 en el SUMAC.

esto privó al Municipio de percibir ingresos por las operaciones de Waste, en concepto de patentes municipales, arbitrios de construcción, propiedad mueble e inmueble, entre otros conceptos.

Luego de extensos trámites procesales, el 1 de diciembre de 2025, el Municipio presentó una *Solicitud de Sentencia Sumaria*[3]. Por medio de dicha solicitud, alegó que la cancelación del Contrato, a base del Artículo 4, Inciso 2, no dependía de ningún incumplimiento de la otra parte. Sostuvo que, por el contrario, la facultad de resolver la obligación podía ejercitarse en cualquier momento, tanto por el Municipio como por Waste. Además, alegó que el Municipio goza de inmunidad soberana, por lo que procede la desestimación de la *Demanda* en su contra. Asimismo, adujo que no hay ninguna prueba de que la conducta de cancelar el contrato fue deliberada, y no incidental a las funciones del Municipio. Sostuvo que, ya que el Contrato contenía una cláusula que permitía su cancelación con meramente anunciarlo a la otra parte en un término de treinta (30) días, no existe una acción en daños por interferencia. Del mismo modo, alegó que Waste no cumplió con las obligaciones ni términos del decreto de exención, por lo que el Tribunal estaba en posición de dictar Sentencia Declaratoria y así determinar que dicho decreto era ilegal. Por todo lo anterior, sostuvo que no existía ninguna controversia sobre hechos materiales, por lo que el foro primario debía dictar sentencia sumaria a su favor.

El 12 de enero de 2026, Waste presentó un escrito titulado *Oposición a Solicitud de Sentencia Sumaria Registrada en SUMAC Núm. 209, y Solicitud de Sentencia Sumaria a Favor de la Parte Demandante*[4]. En el referido escrito, alegó que el expediente revela múltiples controversias reales relacionadas con el alcance e intención de las obligaciones contractuales, la ejecución y validez

---

[3] Entrada Núm. 209 del Caso CG2021CV02138 en el SUMAC.
[4] Entrada Núm. 216 del Caso CG2021CV02138 en el SUMAC.

del decreto de exención contributiva y la alegada cancelación contractual. Asimismo, adujo que el decreto de exención contributiva fue otorgado, ejecutado y agotado hace más de una década. Sostuvo que el Municipio no inició un procedimiento judicial alguno para impugnarlo o revocarlo durante su vigencia, ni dentro del término prescriptivo aplicable. Además, propuso sus propios hechos esenciales, sobre los cuales alegó que no existe controversia material.

El 9 de febrero de 2026, el foro primario emitió la *Sentencia Parcial* que hoy nos ocupa. En el referido dictamen, el foro sentenciador desestimó la *Demanda* con perjuicio, incoada en contra del Municipio, y declaró nulo el decreto de exención contributiva concedido a Waste. Concluyó que, al desestimarse el caso contra del Alcalde, procede la desestimación de la causa de interferencia torticera por parte de tercero en contra del Municipio[5]. Ello, ya que habría falta de parte indispensable en el pleito, o sea, ese tercero. Además, expresó que, si bien es cierto que el acuerdo entre el Municipio y Waste es un contrato de adhesión, Waste voluntariamente accedió a suscribir el mismo. Puntualizó que Waste en ningún momento alegó mala fe por parte del Municipio ante la cancelación del Contrato. Determinó, además, que el decreto de exoneración contributiva emitido a favor de Waste por parte del Municipio es nulo, por Waste incumplir con un sinnúmero de requisitos para su emisión.

En desacuerdo, el 25 de febrero de 2026, Waste presentó una *Moción Solicitando Determinaciones Adicionales al Amparo de la Regla 43 de Procedimiento Civil y Solicitud de Reconsideración*[6]. En dicha moción le solicitó al foro primario que diera por admitidos los

---

[5] El 21 de junio de 2024, el foro primario emitió una *Sentencia*, mediante la cual declaró Ha Lugar la solicitud de desestimación por falta de jurisdicción sobre la persona del Alcalde, en su carácter personal, tras insuficiencia de emplazamiento (Entrada Núm. 139 del Caso CG2021CV02138 en el SUMAC).
[6] Entrada Núm. 221 del Caso CG2021CV02138 en el SUMAC.

hechos propuestos en su *Oposición a la Solicitud* presentada anteriormente, adoptándolos como determinaciones adicionales en una Resolución en Reconsideración. La misma fue declarada *No Ha Lugar*[7] al día siguiente.

Inconforme aún, el 27 de marzo de 2026, la parte apelante presentó el recurso de epígrafe y señaló los siguientes errores:

1. Erró el Tribunal de Primera Instancia al rehusarse a dar por admitidos los trece (13) hechos esenciales (a-m) expuestos por Waste Collection en su Oposición a Moción de Sentencia Sumaria que nunca fueron controvertidos por el Municipio.

2. Erró el Tribunal de Primera Instancia al resolver sumariamente que la exención contributiva otorgada a Waste Collection fue inválida; dicho foro violó la doctrina de la ley del caso porque ya este Honorable Tribunal de Apelaciones había resuelto previamente que se trataba de un hecho en controversia.

3. Erró el Tribunal de Primera Instancia al declarar inválido el decreto de exención contributiva otorgado a Waste Collection toda vez que el término prescriptivo para cuestionarlo ya había transcurrido.

4. Erró el Tribunal de Primera Instancia al fundamentar las determinaciones de hecho 26-31 de la Sentencia en el "Expediente de la Solicitud de Exención", ya que ese documento nunca fue producido por el municipio a Waste Collection.

5. Erró el Tribunal de Primera Instancia al dar por resuelto el Contrato a base de su Artículo 4, Cláusula 2; la actuación del Municipio no cumplió con los requisitos contractuales establecidos para su ejercicio.

6. Erró el Tribunal de Primera Instancia al fundamentar su Sentencia en "rumores en el país sobre posibles ilegalidades por parte de Waste...", y no en evidencia admisible.

En cumplimiento con nuestra *Resolución* del 7 de abril de 2026, notificada el día 9 del mismo mes y año, la parte apelada compareció ante nos mediante un *Alegato en Oposición* el 1 de mayo de 2026.

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

---

[7] Entrada Núm. 222 del Caso CG2021CV02138 en el SUMAC.

## II

### A

El mecanismo de sentencia sumaria provisto en la Regla 36 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 36, es un vehículo para asegurar la solución justa, rápida y económica de un caso. *Cooperativa de Seguros Múltiples de Puerto Rico y otro v. Estado Libre Asociado de Puerto Rico y otros*, 2025 TSPR 78, resuelto el 5 de agosto de 2025; *Serrano Picón v. Multinational Life Ins.*, 212 DPR 981 (2023); *Oriental Bank v. Caballero García*, 212 DPR 671 (2023); *González Meléndez v. Mun. San Juan et al.*, 212 DPR 601 (2023); *Acevedo y otros v. Depto. Hacienda y otros*, 212 DPR 335 (2023); *Universal Ins. y otro v. ELA y otros*, 211 DPR 455 (2023). Dicho mecanismo permite a los tribunales disponer, parcial o totalmente, de litigios civiles en aquellas situaciones en las cuales no exista controversia material de hecho que requiera ventilarse en un juicio plenario y el derecho así lo permita. *Segarra Rivera v. Int'l. Shipping et al.*, 208 DPR 964 (2022). Este mecanismo lo puede utilizar la parte reclamante o aquella parte que se defiende de una reclamación. 32 LPRA Ap. V, R. 36.1 y 36.2.

Mediante el mecanismo de sentencia sumaria, se procura profundizar en las alegaciones para verificar si, en efecto, los hechos ameritan dilucidarse en un juicio. *León Torres v. Rivera Lebrón,* 204 DPR 20, 42 (2020). Este cauce sumario resulta beneficioso tanto para el tribunal, como para las partes en un pleito, pues se agiliza el proceso judicial, mientras simultáneamente se provee a los litigantes un mecanismo procesal encaminado a alcanzar un remedio justo, rápido y económico. *Segarra Rivera v. Int'l. Shipping et al.*, supra. Como se sabe, en aras de prevalecer en una reclamación, la parte promovente debe presentar prueba incontrovertible sobre todos los elementos indispensables de su causa de acción. *Íd.*

Nuestro ordenamiento civil y su jurisprudencia interpretativa impone unos requisitos de forma con los cuales hay que cumplir al momento de presentar una solicitud de sentencia sumaria, a saber: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción sobre la cual se solicita la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales se debe dictar la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. 32 LPRA Ap. V, R. 36.3; *Oriental Bank v. Caballero García*, supra; *Pérez Vargas v. Office Depot*, 203 DPR 687 (2019). Si la parte promovente de la moción incumple con estos requisitos, "el tribunal no estará obligado a considerar su pedido". *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 111 (2015).

Por otro lado, "la parte que desafía una solicitud de sentencia sumaria no puede descansar en las aseveraciones o negaciones consignadas en su alegación". *León Torres v. Rivera Lebrón,* supra*, pág. 43. Por el contrario, quien se opone a que se declare con lugar esta solicitud viene obligado a enfrentar la moción de su adversario de forma tan detallada y específica como lo ha hecho la parte promovente puesto que, si incumple, corre el riesgo de que se dicte sentencia sumaria en su contra, si la misma procede en derecho. *Íd.*

Por ello, en la oposición a una solicitud de sentencia sumaria, la parte promovida debe puntualizar aquellos hechos propuestos que pretende controvertir y, si así lo desea, someter hechos materiales adicionales que alega no están en disputa y que impiden

que se dicte sentencia sumaria en su contra. *León Torres v. Rivera Lebrón,* supra. Claro está, para cada uno de estos supuestos deberá hacer referencia a la prueba específica que sostiene su posición, según exigido por la Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3. *Íd.* En otras palabras, la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa. *Íd.* De lo anterior, se puede colegir que, ante el incumplimiento de las partes con las formalidades de la Regla 36 de Procedimiento Civil de 2009, *supra,* la consideración de sus posiciones descansa en la sana discreción del Tribunal.

Al atender la solicitud, el Tribunal deberá asumir como ciertos los hechos no controvertidos que se encuentren sustentados por los documentos presentados por la parte promovente. *E.L.A. v. Cole,* 164 DPR 608, 626 (2005). Toda inferencia razonable que pueda surgir de los hechos y de los documentos se debe interpretar en contra de quien solicita la sentencia sumaria, pues solo procede si bajo ningún supuesto de hechos prevalece la parte promovida. *Íd.,* pág. 625. Además, al evaluar los méritos de una solicitud de sentencia sumaria, el juzgador o juzgadora debe actuar guiado por la prudencia y ser consciente, en todo momento, que su determinación puede conllevar el que se prive a una de las partes de su "día en corte", componente integral del debido proceso de ley. *León Torres v. Rivera Lebrón,* supra, pág. 44.

Sin embargo, la sentencia sumaria generalmente no procederá cuando existan controversias sobre hechos esenciales materiales, o si la controversia del caso está basada en elementos subjetivos como intención, propósitos mentales, negligencia o credibilidad. *Cruz, López v. Casa Bella y otros,* 213 DPR 80 (2024); *Acevedo y otros v. Depto. Hacienda y otros,* supra; *Segarra Rivera v. Int'l. Shipping et al.,* supra. Un hecho material es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho

sustantivo aplicable. *Banco Popular de Puerto Rico v. Zorrilla Posada y otro*, 2024 TSPR 62, resuelto el 17 de junio de 2024; *Oriental Bank v. Caballero García*, supra, pág. 7; *Mejías et al. v. Carrasquillo et al.*, 185 DPR 288, 299 (2012); *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010). Ahora bien, el Foro de última instancia ha reiterado que cualquier duda no es suficiente para derrotar una moción de sentencia sumaria, pues debe tratarse de una incertidumbre que permita concluir que existe una controversia real sobre hechos relevantes y pertinentes. *Íd.* Además, existen casos que no se deben resolver mediante sentencia sumaria porque resulta difícil reunir la verdad de los hechos mediante declaraciones juradas o deposiciones. *Jusino et als. v. Walgreens*, 155 DPR 560, 579 (2001). De igual modo, no es apropiado resolver por la vía sumaria "casos complejos o casos que involucren cuestiones de interés público". *Íd.* No obstante, la sentencia sumaria procederá si atiende cuestiones de derecho. *Universal Ins. y otro v. ELA y otros*, supra.

El Tribunal Supremo de Puerto Rico ha discutido los criterios que este Tribunal de Apelaciones debe considerar al momento de revisar una sentencia dictada sumariamente por el foro de instancia. *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 679-680 (2018); *Meléndez González et al. v. M. Cuebas*, supra, págs. 118-119. Sobre ese particular, nuestro más Alto Foro señaló que:

> [E]l Tribunal de Apelaciones debe: (1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra*, y la jurisprudencia le exigen al foro primario; (2) revisar que tanto la Moción de Sentencia Sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36; (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos, y (4) de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia. *Roldán Flores v. M. Cuebas et al.*, supra, pág. 679.

Conforme a lo anterior, nos encontramos en la misma posición que el Tribunal de Primera Instancia para evaluar la procedencia de una sentencia sumaria. *Banco Popular de Puerto Rico v. Cable Media of Puerto Rico, Inc. y otro*, 2025 TSPR 1, resuelto el 7 de enero de 2025; *Banco Popular de Puerto Rico v. Zorrilla Posada y otro*, supra; *Birriel Colón v. Econo y otro*, 213 DPR 80 (2023); *Serrano Picón v. Multinational Life Ins.*, supra; *González Meléndez v. Mun. San Juan et al.*, supra; *González Santiago v. Baxter Healthcare*, 202 DPR 281, 291 (2019). Por ello, nuestra revisión es una *de novo* y nuestro análisis debe regirse por las disposiciones de la Regla 36 de Procedimiento Civil, *supra*, así como de su jurisprudencia interpretativa. *González Meléndez v. Mun. San Juan et al.*, supra. A tenor con la referida normativa, dicha revisión se realizará de la manera más favorable hacia la parte que se opuso a la solicitud de sentencia sumaria en el foro de origen y realizando todas las inferencias permisibles a su favor. *Birriel Colón v. Econo y otro*, supra; *Meléndez González et al. v. M. Cuebas*, supra, pág. 118. De esta manera, si entendemos que los hechos materiales realmente están incontrovertidos, debemos revisar *de novo* si el foro primario aplicó correctamente el derecho. *González Meléndez v. Mun. San Juan et al.*, supra.

**B**

En nuestra jurisdicción, los derechos y las obligaciones que han sido adjudicados mediante un dictamen final y firme constituyen ley del caso. *Berkan et al. v. Mead Johnson Nutrition*, 204 DPR 183, 200 (2020); *Cacho Pérez v. Hatton Gotay y otros*, 195 DPR 1 (2016). Véase, además, *Félix v. Las Haciendas*, 165 DPR 832, 843 (2005); *Mgmt. Adm. Servs. Corp. v. E.L.A.*, 152 DPR 599, 606 (2000). La doctrina de la ley del caso tiene como fin que los tribunales nos resistamos a reexaminar asuntos ya considerados dentro de un mismo caso para velar por el trámite ordenado y

expedito de los litigios, así como promover la estabilidad y certeza del derecho. *Íd.*, págs. 200-201; *Mgmt. Adm. Servs. Corp. v. E.L.A.*, supra, pág. 608. En ese sentido, dicha doctrina aplica a las controversias adjudicadas, ya sea por los foros de instancia, como por los foros apelativos. *Íd.*, pág. 201; *Cacho Pérez v. Hatton Gotay y otros*, supra, pág. 9. Es decir, un dictamen judicial adquiere el carácter de ley del caso al constituir una decisión final en los méritos de la cuestión considerada y decidida. *Íd.*; *Félix v. Las Haciendas*, supra. Por tanto, las determinaciones de un tribunal apelativo constituyen la ley del caso en todas aquellas cuestiones consideradas y decididas. Así, pues, generalmente, tales dictámenes obligan, tanto al tribunal de instancia como al foro que las dictó, si el caso vuelve a su consideración. *Íd.*; *Don Quixote Hotel v. Tribunal Superior*, 100 DPR 19, 29-30 (1971); *Srio. del Trabajo v. Tribunal Superior*, 95 DPR 136, 140 (1967).

No obstante, la doctrina de la ley del caso no es un dogma absoluto o inquebrantable. Por el contrario, cuando la aplicación de la ley del caso es errónea o conduce a resultados patentemente injustos, el tribunal tiene discreción para emplear una norma de derecho distinta. *González v. Merck*, 166 DPR 659 (2009); *Noriega v. Gobernador*, 130 DPR 919 (1992); *Rivera v. Insurance Co. of P.R.*, 103 DPR 91 (1974). En ese sentido, el Tribunal Supremo manifestó en *Srio. del Trabajo v. Tribunal Superior*, supra, pág. 140, que "cuando un tribunal se convence de que la ley del caso establecida es errónea y podría causar grave injusticia, debe de tener el poder de aplicar una norma de derecho diferente con el propósito de resolver el caso que tiene ante su consideración en una forma justa". *Pueblo v. Ríos Nieves*, 209 DPR 264 (2022).

**C**

En nuestra jurisdicción, un contrato "es un negocio jurídico bilateral por el cual dos o más partes expresan su consentimiento

en la forma prevista por la ley, para crear, regular, modificar o extinguir obligaciones". Artículo 1230 del *Código Civil de Puerto Rico de 2020*, Ley Núm. 55-2020, según enmendada, 31 LPRA sec. 9751. Así, entre las partes contratantes, las obligaciones que surgen de estos tienen "fuerza de ley entre las partes, ante sus sucesores y ante terceros en la forma que dispone la ley". Artículo 1233 del *Código Civil de Puerto Rico de 2020*, 31 LPRA sec. 9754. De este modo, "[e]l contrato queda perfeccionado desde que las partes manifiestan su consentimiento sobre el objeto y la causa [...]". Artículo 1237 del *Código Civil de Puerto Rico de 2020*, 31 LPRA sec. 9771.

En materia de interpretación de los negocios jurídicos bilaterales, la norma cardinal es que, cuando sus términos son claros, y no dejan lugar a dudas sobre la intención de las partes, se estará al sentido literal de sus palabras. Véase, Artículo 354 del *Código Civil de Puerto Rico de 2020*, 31 LPRA sec. 6342. Sobre el particular, el Tribunal Supremo considera que los términos de un contrato se reputan claros "cuando por sí mismos son bastante lúcidos para ser entendidos en un único sentido, sin dar lugar a dudas, controversias ni diversidad de interpretaciones y sin necesitar para su comprensión razonamientos o demostraciones susceptibles de impugnación". *S.L.G. Francis–Acevedo v. SIMED*, 176 DPR 372, 387 (2009). Así, los tribunales no pueden entrar a dirimir sobre lo que las partes presuntamente intentaron pactar al momento de contratar. *C.F.S.E. v. Unión de Médicos*, 170 DPR 443, 450 (2007).

Sobre la norma de interpretación de los contratos, es preciso destacar que el Alto Foro ha puntualizado lo siguiente:

> [A]l momento de interpretar un contrato es preciso presuponer lealtad, corrección y buena fe en su redacción, e interpretarlo de manera tal que lleve a los resultados conformes a la relación contractual y que estén de acuerdo

con las normas éticas. *SLG Irizarry v. SLG García,* 155 DPR 713, 726 (2001).

Esbozada la norma jurídica, procedemos a aplicarla al recurso ante nuestra consideración.

### III

En primer lugar, cabe destacar que, como foro apelativo intermedio, estamos llamados a revisar *de novo* las solicitudes de sentencia sumaria adjudicadas por el foro primario. Ello, puesto que el Tribunal Supremo ha sido enfático en que nos encontramos en la misma posición que el foro *a quo* para adjudicar la procedencia de una moción de sentencia sumaria.

A tenor con ello, y luego de examinar cuidadosamente *de novo* el trámite procesal, el expediente ante nos, los escritos de las partes, así como la normativa aplicable, estamos en posición de acoger por referencia las relaciones de hechos incontrovertidos formuladas por el foro primario. Luego de evaluar la totalidad del expediente ante nuestra consideración, colegimos que no existen controversias sobre los hechos medulares que impidan la disposición de la presente causa por la vía sumaria.

En su primer señalamiento de error, la parte apelante alega que el foro primario erró en su sentencia, al no dar por admitidos los hechos propuestos en su oposición, ya que estos nunca fueron controvertidos por la parte apelada. No le asiste la razón.

Una sentencia sumaria procede solo en los supuestos en que, el promovido por la moción no puede prevalecer bajo ningún supuesto de hechos, y a la vez el tribunal cuenta con la verdad de todos los hechos necesarios para resolver la controversia. *E.L.A. v. Cole,* supra, pág. 625. En cuanto a dicha moción, la Regla 36.3(c) de Procedimiento Civil, *supra,* establece que la parte contra quien se promueve "[...]estará obligada a contestar en forma tan detallada y específica, como lo haya hecho la parte promovente. De no hacerlo

así, se dictará la sentencia sumaria en su contra **si procede**."
[Énfasis Nuestro]. Ello no implica que se dicta sentencia sumaria
automáticamente, ni que se dan por admitidos los hechos
propuestos, sin más. Por el contrario, requiere un análisis sobre la
totalidad del expediente para que el foro sentenciador determine si
procede o no, tanto la adjudicación por la vía sumaria, como la
determinación de hechos incontrovertidos.

En este caso, el escrito en oposición presentado por el
apelante contenía, a su vez, su propia moción de sentencia sumaria,
la cual no fue adjudicada por el foro primario. No obstante, este foro
apelativo, en su análisis *de novo*, determina que dicha solicitud debe
ser declarada No Ha Lugar. Ello, puesto que los hechos propuestos
por el apelante, no están sustentados con la prueba presentada. A
raíz de ello, los referidos hechos no deben ser acogidos. No se
cometió el primer error.

En su segundo señalamiento de error, el apelante sostiene que
el foro de instancia violó la ley del caso, al resolver que la exención
contributiva otorgada a Waste fue inválida. Alega ello, a base de que
este foro apelativo había resuelto previamente de que se trataba de
un hecho en controversia.

Está claro que el foro de instancia, mediante una *Resolución*[8]*,*
emitida en el mes de junio de 2025, determinó que, para ese
momento en el proceso judicial, la validez de la exención
contributiva se encontraba en controversia. Sin embargo, concluido
el descubrimiento de prueba, y a la luz de la prueba presentada en
la solicitud de sentencia sumaria promovida por la parte apelada,
queda evidente que dicha exención es nula. Ello quedó establecido
por medio de dos elementos. Primero, el Reglamento incorporado a
la Ordenanza Municipal, que establece los requisitos para la validez

---

[8] Entrada Núm. 184 del Caso CG2021CV02138 en el SUMAC.

de una exención contributiva. Segundo, el expediente de la Oficina de Finanzas del Municipio Autónomo de Cidra, que demuestran la falta de los documentos requeridos.

Por su parte, el referido Reglamento dispone, en su Artículo 8 que "[e]l concesionario vendrá obligado a radicar dentro de los noventa (90) días a partir de la fecha de la notificación del Decreto, una declaración jurada donde exprese su aceptación incondicional del Decreto y todos los términos y condiciones contenidos en el mismo[...]"[9]. Asimismo, el Artículo 11 dicta que "[t]oda entidad deberá enviar anualmente a la Oficina de Desarrollo Económico una copia de las planillas contributivas, de contribución sobre la propiedad mueble e inmueble radicadas en ese año al CRIM, certificaciones negativas de deuda (CRIM, Hacienda, Departamento del Trabajo) y copia del volumen de negocios de Patentes Municipales."[10] Al evaluar el expediente del apelante emitido por la Oficina de Finanzas del Municipio, es evidente que este carece, tanto de la declaración jurada, como de múltiples de los informes requeridos para una exención contributiva legítima.

El foro de instancia correctamente concluyó que el apelante incumplió con un sinnúmero de requisitos establecidos en la Ordenanza, por lo que el decreto de exoneración contributiva emitido es nulo. No se cometió el segundo error.

Como tercer señalamiento de error, la parte apelante alega que ya había transcurrido el término prescriptivo para cuestionar la validez del decreto de exención contributiva. No tiene razón.

Nuestro Código Civil dispone, en su Artículo 342, en su inciso (c), 31 LPRA sec. 6312, que un negocio jurídico es nulo "si carece de las formalidades exigidas por la ley para su validez[...]". Un negocio

---

[9] Pág. Núm. 14 del Anejo Núm. 7 de la Entrada Núm. 209 del Caso CG2021CV02138 en el SUMAC.
[10] Pág. Núm. 17 del Anejo Núm. 7 de la Entrada Núm. 209 del Caso CG2021CV02138 en el SUMAC.

jurídico nulo, por definición, no es subsanable. Por lo que, al ser nulo, no hay un término prescriptivo que opere en su contra. O sea, el mero paso del tiempo no subsana la falta de validez del que adolece el negocio jurídico.

En este caso, por el decreto de exención contributiva no cumplir con las formalidades exigidas en la Ordenanza Municipal para su validez, este es nulo. Tal como lo determinó el foro primario, el referido decreto es inválido y por ende, no le opera ningún término prescriptivo que lo pueda elevar a la vida jurídica. No se cometió el tercer error.

En el cuarto señalamiento de error, el apelante alega que el foro de instancia erró al fundamentar ciertas determinaciones de hecho en el "expediente de la solicitud de exención", ya que este nunca fue producido por el Municipio a Waste.

La Regla 36.3 de Procedimiento Civil, *supra*, establece los requisitos de una moción de sentencia sumaria. Como parte de ella, el inciso (a)(4) dispone que contendrá, además, "[...]prueba admisible en evidencia donde se establecen los mismos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal[...]". Ello, con el fin de sustentar los hechos esenciales y pertinentes, sobre los cuales no hay controversia sustancial.

El apelado, al presentar su solicitud de sentencia sumaria, enumeró los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial. A su vez, anejó la prueba donde se sustentan los mismos. En atención a los hechos 26-31, referente al decreto de la exención contributiva, el apelado anejó, como prueba, el expediente de la Oficina de Finanzas del Municipio de Cidra.

Ahora bien, hay que señalar que la precitada regla no limita la prueba que se puede presentar junto a la solicitud de sentencia sumaria, a solo aquella entregada en el descubrimiento de prueba.

Por el contrario, la regla es clara en que el único requisito es que la prueba debe ser admisible en evidencia. De todas formas, cabe destacar que, tal como alega el apelado en su escrito de oposición, en efecto, la parte apelante fue notificada del expediente en cuestión. En específico, en un escrito de oposición a solicitud de sentencia sumaria presentado por la parte apelada, en mayo de 2025, este había anejado el expediente de la Oficina de Finanzas en cuestión.[11] Escrito que fue debidamente notificado a la parte contraria, antes de culminado el descubrimiento de prueba. No tiene ningún mérito el planteamiento del apelante, por lo que no se cometió el cuarto error.

En su quinto señalamiento de error, la parte apelante alega que el foro sentenciador erró al dar por resuelto el Contrato a base de su Artículo 4, inciso 2. Arguye que la parte apelada no cumplió con los requisitos contractuales establecidos para su resolución.

El apelante intenta convencer a este Tribunal que el Contrato en cuestión dispone que la única razón por la que se podía resolver el mismo era por algún incumplimiento con alguna de las disposiciones establecidas en su artículo 8. No le asiste la razón. De una somera lectura del Contrato, se puede colegir que el mismo establece las instancias en que se podía resolver. A saber, en su artículo 4, establece:

> "Este contrato podrá ser resuelto por cualquiera de las partes antes de su vencimiento mediante aviso previo con no menos de TREINTA (30) días de anticipación a la fecha de cancelación excepto en aquellos casos en que LA PARTE CONTRATANTE determine que por el tipo de servicio contratado el aviso deba ser con un tiempo de antelación menor."[12]

En cambio, el artículo 8, en su inciso 5, luego de enumerar los eventos que constituyen incumplimiento, dispone que "[e]n el caso de incumplimiento por LA PARTE CONTRATADA, o por LA

---

[11] Anejo Núm. 5 de la Entrada Núm. 179 del Caso CG2021CV02138 en el SUMAC.
[12] Anejo Núm. 1 de la Entrada Núm. 209 del Caso CG2021CV02138 en el SUMAC.

PARTE CONTRATANTE, cualquiera de LAS PARTES podrá **solicitar la resolución del presente contrato y solicitar el remedio que en derecho corresponda**[…]."[13] [Énfasis Nuestro]. Al evaluar ambos artículos, es claro que habla de dos instancias distintas. El artículo 4 habla sobre la capacidad de resolución del contrato por cualquiera de las partes, siempre que se cumpla con el requisito de un aviso previo con no menos de treinta (30) días de anticipación a la fecha de cancelación. Por el contrario, el artículo 8 habla que, en caso de incumplimiento por una de las partes contratantes, pueden suceder dos cosas simultáneamente. Entiéndase, resolver el contrato y solicitar el remedio que en derecho corresponda, a causa de dicho incumplimiento.

Es norma firmemente establecida, en materia de interpretación de los contratos, que cuando sus términos son claros, y no dejan lugar a dudas sobre la intención de las partes, se estará al sentido literal de sus palabras. Artículo 354 del *Código Civil de Puerto Rico de 2020*, supra. En este caso, los términos del presente Contrato son claros. Reiteramos que, o se resuelve el Contrato por una de las partes con previo aviso de treinta (30) días, o, en caso de incumplimiento, se resuelve dicho Contrato y, a su vez, se solicita el remedio que en derecho proceda. En este caso, la parte apelada cumplió con el requisito de aviso previo de treinta (30) días para la resolución del Contrato. Por tanto, no era necesario que mediara algún supuesto de incumplimiento. No se cometió el quinto error.

En su sexto y último señalamiento de error, el apelante aduce que erró el foro sentenciador al fundamentar su sentencia en "rumores en el país sobre posibles ilegalidades por parte de Waste".

Ahora bien, debemos puntualizar que dicha expresión no es el fundamento para la sentencia emitida por el foro primario. Sino

---

[13] Anejo Núm. 1 de la Entrada Núm. 209 del Caso CG2021CV02138 en el SUMAC.

que es una expresión independiente al análisis que este realizó en derecho. La realidad es que, el foro primario, luego de evaluar el expediente ante su consideración, correctamente aplicó el derecho a los hechos e hizo la determinación que procede. A saber, que el Contrato en cuestión contenía una cláusula de resolución en su Artículo 4, y que la parte apelada la cumplió cabalmente. Las expresiones cuestionadas no son esenciales al resultado, pues la ausencia de controversias materiales de hecho justifica la concesión de la sentencia sumaria. No se cometió el sexto error.

Luego de un estudio minucioso del expediente, no hay controversia de hechos materiales. Al aplicar el derecho vigente a los hechos, concluimos que fue correcta la desestimación de la *Demanda* incoada en contra de la parte apelada y la declaración de nulidad del decreto de exención contributiva concedido al apelante.

En virtud de lo anterior, colegimos que el Tribunal de Primera Instancia no erró al emitir la *Sentencia Parcial* apelada. En fin, al evaluar concienzuda y ponderadamente *de novo* los eventos procesales al palio de la norma jurídica antes esbozada, coincidimos con la determinación del foro apelado.

**IV**

Por los fundamentos antes expuestos, confirmamos el dictamen apelado.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones